## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| INTERNATIONAL BROTHERHOOD ) | Case No.: _____ |
| OF TEAMSTERS, AIRLINE ) | |
| DIVISION ) | Hon. _____ |
| 25 Louisiana Avenue NW ) | |
| Washington, DC 20001, ) | (Jury Trial Demanded) |

INTERNATIONAL BROTHERHOOD )  Case No.: _____
OF TEAMSTERS, AIRLINE )
DIVISION )  Hon. _____
25 Louisiana Avenue NW )
Washington, DC 20001, )  (Jury Trial Demanded)
                          )
and,                      )
                          )
AIRLINE PROFESSIONALS     )
ASSOCIATION OF THE        )
INTERNATIONAL BROTHERHOOD )
OF TEAMSTERS, LOCAL UNION NO. 1224 )
2754 Old State Route 73   )
Wilmington, OH 45177,     )
                          )
and,                      )
                          )
KRISTOFER LANG            )
2771 NE 15th Street       )
Apt. No. 8                )
Fort Lauderdale, FL 33304 )
                          )
                    Plaintiffs,  )
                          )
            v.            )
                          )
ATLAS AIR, INC.           )
2000 Westchester Avenue,  )
Purchase, New York 10577  )
                          )
and,                      )
                          )
POLAR AIR CARGO WORLDWIDE, )
INC.                      )
2000 Westchester Avenue,  )
Purchase, New York 10577  )
                          )
                    Defendants.  )

_____

1

## PLAINTIFFS' VERIFIED COMPLAINT
## FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES

Plaintiffs International Brotherhood of Teamsters Airline Division, ("IBT"), Airline Professionals Association, Teamsters Local Union No. 1224, an affiliate of the IBT, ("Local 1224") (collectively the "Union"), and Captain Kristofer Lang ("Lang;" together with the Union, "Plaintiffs"), for their complaint against Defendants Atlas Air, Inc. ("Atlas") and Polar Air Cargo Worldwide, Inc. ("Polar") (collectively, "Defendants") hereby state as follows:

## JURISDICTION AND VENUE

1.     Plaintiff Union brings this action seeking equitable relief under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, as well as declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* providing that: (a) Defendants are violating the RLA by unlawfully retaliating against pilot Kristofer Lang; and (b) suppressing the federally-protected free speech and associational rights of the Union's members and, in so doing, are undermining the Union in the exercise of its exclusive representational rights under the RLA. Additionally, Plaintiff Union, in its representative capacity as the exclusive bargaining representative of the pilots employed by Defendants, including Plaintiff Lang, along with Plaintiff Lang, bring a supplemental claim under the law of the District of Columbia for wrongful discharge. Accordingly, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, 1367, 2201, and 2202.

2.     The injunctive relief sought by this action is necessary to stop the Defendants from: (a) unlawfully interfering with the Union's approximately 1,600 commercial aircraft pilot employees' federally-protected associational rights; (b) undermining the pilots' duly authorized collective bargaining representative from lawfully carrying out its exclusive representative responsibilities; and (c) retaliating against pilot Captain Lang on account of his having provided federal court testimony in this Court in support of the Union in opposition to Defendants' motion for a preliminary injunction against the Union in the pending action styled *Atlas Air, Inc., et al. v. International Brotherhood of Teamsters, Airline Division, et al.*, Civil Action No. 1:17-cv-01953-RDM, (D.D.C. 2018). Indeed, Defendants have discharged Captain Lang, one of their employees, from his position as a Crew Training Instructor ("CTI") because of said testimony in support of his union and against the Defendants. That punishment has sent a clear, unmistakable and chilling message to the entire Atlas pilot group that their involvement in lawful protected activity in support of their Union will not be tolerated and is taken only at the peril of losing their jobs. Defendants' aforesaid actions against Captain Lang were undertaken for the purpose of retaliating against him for providing testimony in a legal proceeding pending in this Court.  Defendant's actions against Captain Lang were also for the purpose of impeding the Union's ability to function as the certified collective bargaining representative of the

craft or class of pilots under the RLA and to unlawfully coerce a collective bargaining settlement from the Union.

3.     Venue under 28 U.S.C. § 1391(b)(2) and (3) is proper in, and personal jurisdiction over Defendants exists, in this District.  In this regard, Defendants reside and regularly conduct business operations within this District, and the testimony by Captain Lang on behalf of the Union that is the subject of this action occurred in this District in the above-referenced case brought by Defendants against the Union that is pending in this Court.

## THE PARTIES

4.     Plaintiff IBT is a labor organization and is the exclusive bargaining representative, as such term is defined by Section 1, Sixth of the Railway Labor Act ("RLA"), 45 U.S.C. § 151, Sixth, of the pilots employed by Defendant Atlas and who fly aircraft for and on behalf of Atlas and Atlas' sister company, Polar.  The IBT is headquartered at 25 Louisiana Avenue, N.W., Washington, D.C. 20001.  This action is brought by the IBT in its own behalf and for and in the interests of all IBT-represented pilots employed in the service of Defendants. The National Mediation Board ("NMB") determined that Atlas and Polar constituted a single transportation system for representation purposes on September 29, 2008.  Thereafter, on December 28, 2008, the NMB certified the IBT as the exclusive representative of the craft or class of Pilots in the employ of Defendants Atlas and Polar as a single transportation system for representation purposes.

4

5.     Plaintiff Local 1224 is a labor organization headquartered at 2754 Old State Route 73, Wilmington, Ohio 45177.  It is a chartered local union affiliate of the IBT. The IBT has delegated to IBT Local 1224 the exclusive responsibility of providing day-to-day representation to the IBT-represented pilots employed by Defendants.

6.     Plaintiff Kristofer Lang is a pilot employed by Defendant Atlas Air.  As such, he is a member of the Atlas/Polar bargaining unit represented by the IBT.  In addition to his position as a pilot, Captain Lang held a position as a CTI at Defendants' pilot training school.  As a CTI, Captain Lang taught the Human Factors class for Defendants, which includes the fatigue risk management program of Defendants, a program that the United States Federal Aviation Administration ("FAA") requires all United States-certificated air carriers, including Defendants Atlas and Polar, to adopt and teach to their pilots.  Captain Lang was one of the original Human Factors instructors at the training facility, and taught there an average of three or four months per year for the last four years.  He was also involved in the selection and training of nearly all of his fellow Human Factors instructors. The appointment of CTIs are at the Defendants' discretion.  In his position as a CTI, Captain Lang was paid approximately $40,000 per year in addition to his compensation as a pilot working under the Atlas/Polar-IBT collective bargaining agreement.  Captain Lang was highly praised and regarded as an excellent CTI.

7.     Defendants Atlas and Polar are air carriers within the meaning of the RLA, 45 U.S.C. § 181.   Defendants engage in world-wide cargo operations. Although Defendants each hold separate air carrier operating certificates from the United States Department of Transportation, they function as a "single transportation system" under the RLA for purposes of labor relations involving their pilot group, and Atlas is the employer of all of the pilots who fly for both Defendants Atlas and Polar.  Both Atlas and Polar are Delaware corporations and are headquartered at 2000 Westchester Avenue, Purchase, New York 10577.

## FACTS

8.     The Union and Defendants are parties to a collective bargaining agreement covering the rates of pay, rules and working conditions of the IBT-represented pilots employed by Atlas.

9.     The Union and Defendants are engaged in a collective bargaining dispute.  In this regard, pursuant to RLA Section 6,  45 U.S.C. § 156, in early January, 2016, the Union and Defendants commenced collective bargaining negotiations to amend their extant collective bargaining agreement.

10.     During this collective bargaining dispute over the terms of the bargaining agreement, on September 25, 2017, Defendants initiated a lawsuit in this Court against Plaintiffs claiming that the Union and its pilots were

engaged in a slowdown in violation of the RLA status quo. *Atlas Inc., et al. v. International Brotherhood of Teamsters, et al.,* Case 1:17-cv-01953-RDM (D.D.C. 2018) ("Complaint"), Document 1.[1] Defendants Atlas and Polar also filed a motion for preliminary injunctive relief. In support of their complaint and motion for preliminary injunctive relief, Defendants Atlas and Polar submitted a sworn declaration from their Senior Vice President of Flight Operations, Captain Jeffrey Carlson. *Complaint,* Doc. 5, Doc. 5-3. As Senior Vice President of Flight Operations, Captain Carlson is responsible for all of Defendants' hiring, training, operations control, dispatching and scheduling. As such he is responsible for the management of Defendants' pilot training school, including the content and curricula of the school's courses, as well as the hiring, removal, and management of the school's CTIs who teach the Defendants' pilot training courses. Captain Carlson is the direct supervisor of Defendants' training director, Scott Anderson.

11. Defendants, in their Complaint and motion for injunctive relief, averred, among other things, that the Union was orchestrating a slowdown against Defendants by instructing Defendants' pilots to make false fatigue calls in order to remove themselves from duty and piloting aircraft. Defendants further claimed that by causing such actions, the Union sought to substantially disrupt Defendants' flight operations. *Complaint* ¶ 4. *See also*

---

[1] Citations to the docket in Case 1:17-cv-01953-RDM will hereinafter be styled as ("*Complaint,* Doc. _").

Declaration of Captain Jeffrey Carlson, *Complaint*, Doc. 5-3 (9/25/2017), ¶ 16, 22-24.

12.     Defendants also alleged in the Complaint and motion for preliminary injunctive relief that the Union and its pilots designed these unlawful concerted activities to cause maximum disruption to Atlas' operation and thereby exert pressure on Atlas to capitulate in collective bargaining. *Complaint* ¶ 39. *See also* Declaration of Captain Jeffrey Carlson, *Complaint,* Doc. 5-3 (9/25/2017), ¶ 16.

13.     In paragraph 53, bullet 4, page 23 of the complaint, Defendants alleged that "[o]n July 1, 2017, a Captain, who had previously received more than 25 hours of rest, called out fatigued on a flight carrying 340 military members from Pope Field in North Carolina to Hahn, Germany delaying the flight for over nine hours. All 340 military members were through passengers, scheduled to travel on from Hahn to Kuwait. As a result of the fatigue call, their second flight was delayed over nine hours as well." *See also* Declaration of Captain Jeffrey Carlson, *Complaint*, Doc. 5-3 (9/25.2017), ¶ 53, bullet 4.

14.     The Captain referenced in that paragraph 53 was Plaintiff Captain Lang.

15.     As part of Defendants' still-pending Complaint and action against the Union, and in support of the Union's defense against Defendants' motion for injunctive relief, Captain Lang submitted an October 19, 2017 sworn declaration stating that the allegations in paragraph 53 of the complaint and

contained in Captain Carlson's declaration regarding him were not true. A true and correct copy of Plaintiff Captain Lang's declaration is attached hereto as Exhibit "1."

16.    At the injunction hearing, conducted on October 31 through November 2, 2017, Defendants Atlas and Polar disavowed every single instance of fatigue and sick calls identified in the Defendants' complaint as well as Captain Carlson's supporting declaration which purported to show evidence of an illegal slowdown by the Union and the Atlas and Polar pilots. Captain Lang was one of more than thirty pilots who were accused of faking fatigue and sickness as part of a concerted slowdown effort and who submitted a sworn declaration refuting the Defendant's admittedly false, and the significant emphasis that Defendants had put on instructing the pilots to ensure they adhere to their federal regulatory duty and company policy to not fly fatigued and therefore unfit for duty. Captain Lang testified, among other things, about how Defendants' managers had encouraged pilots to follow the precepts of the Defendants' fatigue risk management program, and to call in fatigued more often rather than risk their lives and safety as well as that of their fellow crewmembers, passengers, and people on the ground. Captain Lang's testimony effectively and very powerfully countered and refuted Defendants' allegations in the Complaint, as well as the written and live testimony of Captain Carlson, that the pilots were illegally calling off fatigued as part of a Union pilot slowdown to pressure the Defendants in negotiations.

Defendants' senior executives, including William Flynn, the president and chief executive officer of Atlas Air Worldwide Holdings, Inc., Defendants' parent holding company, and John Dietrich, Atlas Air Inc.'s president and chief operating officer, attended the court hearing along with Captain Carlson, and were present when Plaintiff Captain Lang testified.

17.     On November 30, 2017, this Court granted Defendants' motion for a preliminary injunction against the Union.     *Complaint*, Docs. 59, 60 (11/30/17). In so doing, however, the Court rejected the Defendants' claims that the Union and Defendants' pilots had unlawfully engaged in a slowdown by falsely calling off fatigued.  In support of that conclusion, the Court expressly referred to Plaintiff Lang's testimony.  In this regard, Judge Moss wrote that:

> In addition, according to Captain Christopher Lang, one of Atlas's FRMP instructors, the company and its pilots have "constantly developed the program and increased the training on—the awareness training on fatigue." Hearing Tr. Day 3 (96:8–17). Captain Lang further testified that, "[p]articularly since February of this year, [they have] increased the [in-class] training," and that they added a "fatigue module" to the mandatory, quarterly computer training "this year" and "probably" for "part of last year as well." Id. (96:8–98:4). And, finally, Captain Lang testified that Atlas's program director for the FRMP appeared at a check airmen's meeting in August of this year and, after about half of the pilots present conceded that they had flown fatigued, he "encouraged [those present] to call in fatigued more often; to improve flight safety and not [to] fly when . . . fatigued." Id. (98:7–99:12).

*Complaint*, Doc. 59, pg. 52.

18.     Defendants did not appeal the Court's denial of preliminary injunctive relief with respect to the Court's rejection of their accusations that

the Union and their pilots had engaged in an illegal slowdown by falsely calling off fatigued.

19.     Captain Lang last taught at Defendant's training facility as a CTI in September, 2017.  He was scheduled to teach Defendants' Human Factors class again in December 2017 and thereafter in April, November and December, 2018.   Shortly before traveling to the training facility to teach the Human Factors course in December, 2017 as he had been scheduled, Defendants' management notified Captain Lang that he would not teach the course and directed that he instead work as a line pilot. The same thing happened just before he was scheduled to teach the Human Factors course in April, 2018; management told him that he would not teach the course and directed him to work as a line pilot instead.  In both instances, the Human Factors course was conducted, but Defendants staffed it with instructors other than Captain Lang.

20.     In March or April, 2018, Captain Lang received a phone call from Defendants' training director, Scott Anderson. Anderson issued Captain Lang a "verbal counseling", directing him to change his behavior.  Captain Lang asked Anderson to clarify his instruction, as Anderson had not given him any details or reasons giving rise the directive.  Captain Lang was also confused by the directive because he was not sure what "behaviors" Anderson was referring to - as the last time he had worked in the training center was in August and September of 2017.

21.    In September, 2018, Defendants' training director, Scott Anderson, sent Captain Lang an email requesting that he meet with Anderson on September 17, 2018 after he had finished taking his scheduled recurrent training class. At that meeting, Anderson told Captain Lang, "you know what's coming." Indeed, Captain Lang did not know "what was coming," and asked Anderson what he meant. Anderson then told Captain Lang that he was being removed as a CTI effective October 1, 2018. Captain Lang twice asked Anderson why he was being fired as a CTI, but Anderson refused to give him any reasons. Anderson did state, however, that the directive to remove him had come from "higher up." Inasmuch as Anderson is a senior manager and director of Defendants' training facility, his reference to "higher ups" could only mean Senior Vice President of Flight Operations Captain Jeffrey Carlson and senior executives, including William Flynn and John Dietrich. Flynn, Dietrich and Carlson all attended the three-day injunction hearing in this Court at which Captain Lang had testified against Defendants and resoundingly refuted the sworn testimony of Captain Carlson and the Defendant's admittedly false claims. Well over fifty pilots employed by Defendants also attended the hearings, as did reporters from several news services.

22.    Defendants' discharge of Captain Lang from the CTI position was made for discriminatory and retaliatory reasons, motivated by an intent to punish Captain Lang for testifying against Defendants in the preliminary injunction hearing. Captain Lang's testimony, along with his and his fellow

pilots' declarations, had the effect of subjecting Captain Carlson and the Company's senior executives to open ridicule by laying bare their mendacity in that proceeding. As a result, the company's management has incurred grievous loss of respect by Defendants' pilots, whom continue to doubt their veracity.

23.    Defendants' discharge of Captain Lang was also made to chill Captain Lang and the Defendants' other Union-represented pilots from testifying for or otherwise engaging in support of the Union with respect to its representative activities and functions.

24.    Defendants' discharge of Captain Lang was also made to intimidate and coerce Plaintiffs and Defendants' pilots to acquiesce to Defendants' bargaining demands in their ongoing labor dispute with the Union regarding the amendment of the collective bargaining agreement between the Defendants and the Union.

25.    Defendants' conduct, as evidenced by their activities described in this Complaint, is motivated by anti-union animus, and is interfering with, influencing with, and coercing the employees' choice of representatives for the purpose of weakening the union as an institution. The aforementioned unlawful conduct is part of a predetermined, improper anti-union campaign designed and undertaken to strike a fundamental blow to the Union, its efforts in securing a favorable contract for its members, and the collective bargaining process itself.

26.     Defendants' actions against Plaintiff Lang and the harm they have caused him and the Union cannot be remedied through the grievance/arbitration procedure set forth in the collective bargaining agreement between the Union and Defendants because the CTI position from which Captain Lang was discharged is effectively an at-will position.

## CAUSES OF ACTION

## COUNT I

## (Violation of Section 2, First of the RLA)

27.     The allegations of paragraphs 1 through 26 of the Complaint are incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

28.     Section 2, First of the RLA, 45 U.S.C. § 152, First, states:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

29.     By retaliating against Captain Lang and attempting to chill pilot support of the Union in its representative activities and functions, Defendants have acted in violation of their duties under Section 2, First of the RLA by improperly and in bad faith seeking to use the Defendants' pilots as leverage to force the Union and the pilots to acquiesce to the Defendants' bargaining

demands and strategies with respect to the on-going collective bargaining dispute between the Defendants and the Union.

30.    The Defendants and Union have a long-standing practice not to politicize the hiring and firing of CTIs and not to use CTIs as cannon fodder to leverage each other's bargaining demands during collective bargaining negotiations.  That practice constitutes part of the status quo that must be preserved under the RLA while the Defendants and the Union remain engaged in their ongoing collective bargaining dispute – a dispute that is covered by RLA Sections 6 and 5, 45 U.S.C. §§ 156, 155.  By discharging Captain Lang as a CTI and, in so doing, attempting to chill pilot support of the Union in its representative activities and functions, Defendants have acted in violation of their status quo obligations under Section 2, First of the RLA by unilaterally changing terms and conditions of employment, including objective practices recognized by the parties.

31.    The Union is entitled to injunctive relief to remedy Defendants' violation of their status quo duties under Section 2, First of the RLA without regard to the existence of irreparable harm. To the extent a showing of irreparable harm is required, Defendants' actions in discharging Captain Lang in the course of the on-going collective bargaining dispute between the Defendants and the Union, the Defendants are irreparably injuring the Union in the performance of is representational activities and functions and

irreparably harming the Union's members by chilling and limiting its members' free speech and associational activities in support of their Union.

## COUNT II

### (Violations of RLA, Section 2, Seventh, and RLA, Section 6)

32.   The allegations of paragraphs 1 through 31 of the Complaint are incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

33.   Section 2, Seventh of the RLA, 45 U.S.C. § 152, Seventh, states

> No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements, except in the manner prescribed in such agreements or in section 156 of this title.

34.   Section 6 of the RLA, 45 U.S.C. § 156, further states:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice.  In every case, where notice of intended change has been given . . . rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by Section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request or proffer of the services of the Mediation Board.

35.   Defendants and the Union are engaged in a collective bargaining dispute involving the amendment of their collective bargaining agreement.

That dispute is pending before the NMB, pursuant to RLA Sections 6 and 5, 45 U.S.C. §§ 156, 155.

36.    By discharging Captain Lang as a CTI and, in so doing, attempting to chill pilot support of the Union in its representative activities and functions, Defendants have acted in violation of their status quo obligations under Section 2, Seventh and Sixth of the RLA by unilaterally changing terms and conditions of employment, including objective practices recognized by the parties.   Moreover, as the case with respect to the Defendants; violations of RLA Section 2, First, the Union is entitled to an injunction to enjoin violations of the status quo provision of RLA Section 2, Seventh and Section 6, without regard to the existence of irreparable harm.

## COUNT III

### (Violation of Section 2, Third of the RLA)

37.    The allegations of paragraphs 1 through 36 of the Complaint are hereby incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

38.    Section 2, Third of the RLA, 45 U.S.C. § 152, Third provides:

> Representatives for the purposes of this chapter, shall be designated by the respective parties without interference, influence or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with influence, or coerce the other in its choice of representatives.

39.    By retaliating against Captain Lang for engaging in protected Union-related activity, Defendants interfered with, influenced and/or coerced

Captain Lang and all of the Defendants' pilots in the exercise of their right to designate representatives of their choosing. By such conduct, Defendants also interfered with the right of the Union and its members to freely participate in protected activity under the RLA.

40.     The actions of the Defendants referenced herein were motivated by anti-union animus and taken for the purpose of impairing the ability of the Union and its members to function, freely associate, to destroy support for the Union, to weaken the IBT and ultimately destroy it as representative, and to coerce a collective bargaining settlement.

## COUNT IV

### (Violation of Section 2, Fourth of the RLA)

41.     The allegations of paragraphs 1 through 41 of the Complaint are hereby incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

42.     Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth provides:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing . . . No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier . . . to influence or coerce employees in an effort to induce them . . . not to join or remain members of any labor organization.

43.     By retaliating against Captain Lang for the purpose of chilling and squelching support for the Union, Defendants have interfered with, and

continue to interfere with, the rights of employees to bargain collectively through their Union free from coercion and interference from Defendants, and have continued to coerce and interfere with the right of Union members to freely participate in protected activity under the RLA.

44.     The actions of Defendants referenced herein were motivated by anti-union animus and taken for the purpose of impairing the ability of the Union and its members to function and freely associate, to destroy support for the Union, to weaken the Union and to ultimately destroy it as representative, and to coerce and intimidate the Union and its members to accede to Defendants' demands in the ongoing labor dispute between the Defendants and the Union.  Defendants' actions as described herein have harmed the Union in is representational capacity as well the entire Atlas bargaining unit represented by the Union; as such, none of these injuries can be resolved by or through a contractual adjustment board.

45.     By engaging in said actions, Defendants have violated, and continue to violate, Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth.

## COUNT V

### (Violation of Public Policy – Wrongful Discharge Tort)

46.     The allegations of paragraphs 1 through 45 of the Complaint are hereby incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

47.     Captain Lang was employed by Defendants as a CTI.

48.    On or about October 1, 2018, the Defendants wrongfully discharged Plaintiff Lang from his CTI position in violation of public policy.

49.    Said wrongful discharge was predominantly motivated by his testimony against Defendants in *Atlas Inc. v. IBT*, Case 1:17-cv-01953-RDM in support of the Union.

50.    Said wrongful discharge violated clear public policies against intimidating, threatening and/or tampering with witnesses testifying in judicial proceedings including but not limited to those policies set forth in the First Amendment to the United States Constitution, the RLA, federal labor law, 18 U.S. Code § 1512 , and D.C. Code § 22–722.

51.    Said wrongful discharge directly and proximately caused him substantial harm including substantial loss of pay and benefits, loss of professional reputation, mental anguish, and further damages.

## **RELIEF REQUESTED**

WHEREFORE, the Plaintiffs respectfully request that the Court grant the following relief:

(A)    Declaratory relief finding that the Defendants violated the RLA as set forth in Counts One through Four of this Complaint.

(B)    After conducting a hearing, issue a Preliminary  and Permanent Injunction   prohibiting the Defendants from interfering with the selection of a collective bargaining representative by its pilot and flight

engineer employees in the craft or class, and specifically further prohibiting the Carrier from:

1. Intimidating, coercing or retaliating against its pilots for exercising their individual or collective rights under the RLA and District of Columbia law;

2. Wrongfully discharging, disciplining or harassing pilots under the RLA and District of Columbia law;

3. Threatening pilots with adverse action including without limitation discipline and discharge from their line pilot positions and appointed positions as CTIs on account of their protected union activity, union support, or speech;

4. Discriminating against pilots on account of their union activity or support for the union;

5. Otherwise violating the rights of its pilots under the RLA and District of Columbia law.

(C)   An order finding that Defendants discharged Plaintiff Lang from his position as a CTI in violation of public policy pursuant to the law of the District of Columba, as well as declaratory, preliminary and permanent injunctive relief requiring the Carrier to immediately reinstate Captain Lang to his CTI position and to provide him with work at his regular duties in that position as well as restoration of

all of his compensation and benefits and other incidents of employment;

(D)    Declaratory, preliminary and permanent injunctive relief prohibiting the Carrier's practice of threatening or coercing employees for exercising their rights to support a union;

(E)    An Order requiring the Carrier to remove from Captain Lang's employment files any references to any such discharge or negative information related to his activity in support of the Union;

(F)    An order requiring the Carrier to conspicuously post copies of the Court's injunctive order at each of its facilities and training locations in the United States which are regularly frequented by Defendants' pilots, including without limitation, on internal electronic media and Carrier websites, and by email to all Company employees;

(G)    An order requiring the Defendants' Chief Executive Officer to personally read aloud this injunctive order to employees on paid work time via Carrier meetings with pilots and employees, *e.g.* "Employee Exchanges" and video via video posted on internal electronic media and all other Carrier websites, email and media;

(H)     An order requiring Defendants to publish the injunctive order, in Spanish, English, and German in the Defendants' internal newsletter and mail copies to all employees on the Defendants' payroll going back to the onset of the unlawful behavior;

(I)     An award of compensatory and punitive damages to Captain Lang resulting from his illegal discharge as a CTI and/or from any other unlawful behavior;

(J)     An award of the Plaintiffs' attorneys fees and costs incurred in bringing this action; and

(K)     Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury of all issues so triable.


Dated: February 1, 2019                    Respectfully submitted,


*/s/ Edward M. Gleason*
Edward M. Gleason
D.C. Bar No. 429325
LAW OFFICE OF EDWARD
GLEASON, PLLC
910 17th Street, N.W., Suite 800
Washington, DC 20006
Ph: (703)-608-7880
egleason@gleasonlawdc.com


James Petroff (Ohio 42476)
Trent R. Taylor (Ohio 91748)
BARKAN MEIZLISH, LLP
250 East Broad Street, 10th Floor
Columbus, Ohio 43215
Ph: (614) 221-4221
Fax: (614) 744-2300
jpetroff@barkanmeizlish.com
ttaylor@barkanmeizlish.com
(*pro hac vice* to be filed)

*Counsel for Plaintiffs*

## VERIFICATION

I, Robert Kirchner, certify under penalty of perjury that: (1) I am the Executive Council Chairman of the Atlas pilots represented by the International Brotherhood of Teamsters, Airline Division, and is local union affiliate, Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 ("Local 1224;" together with the IBT, the "Union"), as well as a member of Local 1224's governing Executive Board; (2) I am familiar with the matters stated in the foregoing Complaint; and (3) the facts state therein are true and correct.

Executed JANUARY 30, 2019

Robert Kirchner

## <u>ADITIONAL VERIFICATION</u>

I, Kristofer Lang, certify under penalty of perjury that I am a plaintiff in the foregoing Complaint, that I am familiar with the matters stated in the Complaint relating to my termination as a CTI, and that the facts stated therein related to those matters are true and correct.

Executed _____, 2019          _____
                                                Kristofer Lang