# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ATLAS, INC., *et al.*, | ) |
|  | ) |
| Plaintiffs, | ) |
| v. | ) |
|  | ) |
| INTERNATIONAL BROTHERHOOD | ) |
| OF TEAMSTERS, AIRLINE | ) |
| DIVISION, *et al.*, | ) |
|  | ) |
| Defendants. | ) |

Case No.: 1:17-cv-01953-RDM

Hon. Randolph D. Moss

## <u>DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE RELIEF</u>

# Union Exhibit 10:

# Declaration of Kristofer Lang

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ATLAS AIR, INC. and POLAR AIR CARGO WORDLWIDE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS; INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION; and AIRLINE PROFESSIONALS ASSOCIATION OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL UNION NO. 1224,<br><br>Defendants. | Civil Action No. 1:17-CV-01953 RDM |

## <u>DECLARATION OF KRISTOFER (KRIS) LANG</u>

I, Kristofer (Kris) Lang, do hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the following:

1.     I am employed as a pilot by Atlas Air, Inc. ("Atlas").  I have an air transport pilot's license from the Federal Aviation Administration and work as an Atlas captain flying Boeing 747 aircraft.  I have worked at Atlas since April 18, 2011.  Since 2011, I understand that Atlas and its affiliated company, Polar Air Cargo Worldwide, Inc. (Polar) have operated separately under their own regulatory operating certificates and authorities but the pilots who fly their aircraft work under one collective bargaining agreement (CBA) and one seniority list. Moreover, despite the fact that both Atlas and Polar are collectively referred to as the "company" under the CBA, the pilots who operate their aircraft pursuant to the CBA are all employees of Atlas.

2.     I understand that Atlas and Polar (collectively, the "Plaintiffs") have filed a lawsuit against my union, claiming that the union and the Atlas pilots are engaging in an illegal

slowdown. I have read Plaintiffs' complaint and the declaration of Captain Jeffrey Carlson, in support of Atlas's motion for a preliminary injunction. I understand that Captain Carlson is the Senior Vice President of Flight Operations for Plaintiffs' corporate parent, Atlas Air Worldwide Holdings, Inc. Neither Plaintiffs' complaint nor Captain Carlson's declaration specifically identify the pilots whom they have accused of engaging in various purported unlawful slowdown activity. After reading the complaint and Captain Carlson's declaration, however, I recognized that I am one of the Atlas pilots accused of engaging in such slowdown activity by abusing the Atlas fatigue policy as provided for under the Atlas Fatigue Risk Management Plan. In this regard, I am one the pilots described in Paragraph 53 of the complaint, and specifically in bullet number "4" of Paragraph 53 of the complaint. I am also described in Paragraph 23 of Captain Carlson's declaration, and specifically in bullet number "4" of his declaration. Both the complaint and Captain Carlson's declaration specifically accuse me of calling off fatigued from a flight from a flight from Pope Field, North Carolina to Hahn, Germany not because I was fatigued but instead as part of "a "calculated campaign to cause long delays and maximum harm" to Atlas. The flight they are referring to is Flight No. Flight No. 8662. These accusations and allegations by Plaintiffs and Captain Carlson are not true.

3.       The reasons why I called out fatigued are explained in the narrative that I provided to the Atlas Fatigue Risk Management Committee (FRMC), a joint labor-management committee that was established to administer Atlas's FAA-required Fatigue Risk Management Program. That narrative, which I submitted to the FRMC shortly after I called off fatigued, accurately and truthfully details why I was physically unfit for duty based on fatigue. I kept a copy of my narrative for my records, and a true and correct copy of it is attached hereto as Lang Exhibit "1."

4.     I have willingly and voluntarily consented to provide the Court with the details of my fatigue calls, and consent to the use of those details in this case. I have done so because the accusations and insinuations against me personally are false and because they, along with those accusations and insinuations related to other pilots whose fatigue callouts are now also being characterized by the Plaintiffs and Captain Carlson as illegitimate, have the effect of undermining the FAA's and Atlas' fatigue risk program. That is because pilots, after reading the complaint and Captain Carlson's declaration are concerned that they will now be punished or have their reputations tarnished for calling out fatigued.

5.     When I called out fatigued, I followed Atlas's and the FRMC's fatigue protocols by calling in to the Atlas Scheduling Department and advising a scheduler on a recorded telephone call that I was fatigued and required rest. My narrative, which, as noted above, is attached hereto as Lang Exhibit "1," accurately and truthfully explains why I had called off fatigued. As set forth in that narrative, my reasons for having called off fatigued are as follows:

> On Saturday, July 1, 2017 I was scheduled to operate a PAX flight from POB to HHN. The flight was scheduled to depart POB at 0425Z, but actual departure time was 1330Z due to my fatigue call. The flight was originally scheduled as a 3 person flight crew.

> I arrived in POB via gateway about 24 hours prior to scheduled departure time. As stated in Jeff Carlson's document, I definitely had the opportunity to receive adequate rest. However, as I teach in my Human Factors classes, (and Jeff Carlson attended one in February as part of his own recurrent training), adequate rest does not necessarily mean actual rest.

> Many factors affect actual rest, including circadian rhythms, shifting day/night cycles and amount of manageable sleep one can obtain in a 24 hour window.

> After arriving in POB, I had dinner and went to bed, managing about 8 hours of sleep. I had set my alarm for 0600L in order to give myself plenty of wakeful hours during the day, to attempt another rest period prior to operating the flight. I had lunch with one of the FOs after which I returned to the hotel and went to bed.

> I did not get any useful rest, as my room was located next to the pool, where a large group of guests was playing, splashing and listening to loud music.

*As time went on, I realized that I would not be adequately rested to operate. I did check my schedule several times, wondering if with 2 other crewmembers I would be able to get sufficient rest periods during the flight to manage a safe operation.*

*Several hours before wakeup, I noticed that one of the FOs had been removed from the schedule – leaving a 2 person crew to operate a nearly 8 hour red-eye flight with 340 passengers on board. At this time, without any rest possible on the flight, in the interest of safety, I decided to call in fatigued.*

*Here are the major contributing factors from the company:*

- *none of the flight attendants were made aware of the new/adjusted departure time, resulting in the entire group ready to go in the lobby at original departure time. During my call to scheduling, I had stressed that the FAs be notified to prevent this situation from arising.*

- *The FO that was taken off the schedule arrived in POB late and was not able to receive adequate rest. Here the company failed to follow their own guidance, as the station guide clearly states NOT to commercial into RDU when transitioning to POB. Because of added travel time via Limo, the FO arrived at the hotel late.*

6.     Until Plaintiffs filed the complaint in this case, Atlas has never questioned the legitimacy of my fatigue callout.  If Atlas thought that I had intentionally falsified my callout, it could have initiated both counseling and disciplinary proceedings against me.  Atlas never initiated any such counseling or disciplinary proceedings against me, however.  Instead, after I submitted by fatigue report to the FRMC, I learned that that the FRMC had accepted my report, thereby recognizing that I had legitimately called out fatigued.

7.     I did not call out fatigued to cause flight delays or otherwise to disrupt the company's operations.  I called out fatigued because I was exhausted and not fit for duty.

8.     I did not call out fatigued on account of pilot or peer pressure, as part of a plan or plot by the Atlas pilots, instructions from the Union, or pressure from the Union or any of its representatives. I called out fatigued because, as I stated above and informed Atlas and the FRMC at the time, I was fatigued and not fit for duty.

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

__19 OCT 2017__                                        _K. Lang_
Dated:                                                  Signed

Lang Exhibit No. "1"
Page 1 of 1

The following statements are factual.

On Saturday, July 1, 2017 I was scheduled to operate a PAX flight from POB to HHN.

The flight was scheduled to depart POB at 0425Z, but actual departure time was 1330Z due to my fatigue call. The flight was originally scheduled as a 3 person flight crew.

I arrived in POB via gateway about 24 hours prior to scheduled departure time. As stated in Jeff Carlson's document, I definitely had the opportunity to receive adequate rest. However, as I teach in my Human Factors classes, ( and Jeff Carlson attended one in February as part of his own recurrent training ), adequate rest does not necessarily mean actual rest.

Many factors affect actual rest, including circadian rhythms, shifting day/night cycles and amount of manageable sleep one can obtain in a 24 hour window.

After arriving in POB, I had dinner and went to bed, managing about 8 hours of sleep. I had set my alarm for 0600L in order to give myself plenty of wakeful hours during the day, to attempt another rest period prior to operating the flight. I had lunch with one of the FOs after which I returned to the hotel and went to bed.

I did not get any useful rest, as my room was located next to the pool, where a large group of guests was playing, splashing and listening to loud music.

As time went on, I realized that I would not be adequately rested to operate. I did check my schedule several times, wondering if with 2 other crewmembers I would be able to get sufficient rest periods during the flight to manage a safe operation.

Several hours before wakeup, I noticed that one of the FOs had been removed from the schedule – leaving a 2 person crew to operate a nearly 8 hour red-eye flight with 340 passengers on board. At this time, without any rest possible on the flight, in the interest of safety, I decided to call in fatigued.

Here are the major contributing factors from the company:

- none of the flight attendants were made aware of the new/adjusted departure time, resulting in the entire group ready to go in the lobby at original departure time. During my call to scheduling, I had stressed that the FAs be notified to prevent this situation from arising.
- The FO that was taken off the schedule arrived in POB late and was not able to receive adequate rest. Here the company failed to follow their own guidance, as the station guide clearly states NOT to commercial into RDU when transitioning to POB. Because of added travel time via Limo, the FO arrived at the hotel late.

The company and the union have a standing fatigue policy. I am very familiar with it as I teach it in class numerous times throughout the year. Furthermore in our FOM on page 1.1.1 it clearly states that Safety is the number 1 priority of Flight Operations.

How Jeff Carlson can now hold this fatigue call against me and the Union is beyond me. To me, it seems like he is directly going against his own, published guidance, promoting unsafe operations.

Samson Exhibit No. "1"
Page 1 of 1

I prepped for R2 to begin on Friday, 01SEP17, 0400L—1800L.

At 0627L, I was notified of a schedule change consisting of a shortened R2 (ending at 0900L). New Duty was to begin at 1955L (w/u at 1825L). I accepted that change with the forethought of a number of variables: That I would be able to be rested for the evening departure. That another change could occur that would result in my being called out during the amended R2 period (ending at 0900L). That there could be another change in the meantime that would affect the evening trip. Additionally, less than a year ago, there was a fatigue situation wherein I was advised that the Chief Pilots' position on 'foreseeing' a fatigue situation was that Fatigue was to be determined at the time Fatigue was being declared. (IOW, wait to see if fatigue is an actual issue at, for example, report time.) All of this was considered in my judgement and condition that resulted in my Fatigue call.

At approx 1820L (five minutes prior to the scheduled wakeup time), the PCD indicated a change. I checked AIMS to see new report time was 2200L (w/u at 2030L).

I did much thinking on the situation where I was supposed to begin a new Duty period at the opposite side of my sleep cycle (IOW, I was being asked to begin duty at the very time that I would naturally be going to bed after being R2 notified at 0627L). The earlier departure time would have at least allowed me to handle a preflight at the very end of my awake cycle and hope that the other cm's were rested enough to allow me the first break in flight. With the delay, that possibility withered significantly as it was (let alone the real possibility of further delay that is common for this customer).

At 1907L, I called Fatigue. I was told that the new Report time will be 1340Z (0640L) with a departure time of 1510Z (0810L).


Suggestion Narrative:

Contemplate and consider sleep cycles. This was a case of the worst possible chance for rest. To be sleep-prepared for duty only to then be woken and told to repeat that same amount of sleep again almost immediately for duty period that could not have been placed more squarely at odds with any sleep cycle.